Good morning. Your Honor, it's George Hunter for Appellant. Mr. Hunter, could you keep up your voice? George Hunter for Appellant. Good. Thank you. For more than 20 years, HUD has adhered to a policy that a private landlord occupancy restriction policy restriction does not violate the Fair Housing Act. If the restriction is reasonable. HUD in 2013 promulgated a regulation recognizing that fair housing discrimination prescribes disparate impact discrimination. But that statement does not alter in any way the general policy that restrictions must be reasonable. In the case before you today, the Fair Housing Center and several amici who submitted briefs in support have consistently advised and continue to advise prospective renters and private landowners that HUD allows reasonable occupancy restrictions. Despite providing that advice, Appelli and amici contend that the court should disregard HUD's reasonableness standard. Further, Appelli and amici contend that if liability attaches to the occupancy policy at issue, Mr. Scheetz's conduct supports an award of punitive damages. Yet, abundant evidence in the record demonstrates that Mr. Scheetz did not perceive a risk that the occupancy policy at issue violates the Fair Housing Act. To borrow from Appelli's counsel, Mr. Scheetz believes that A, he knows the applicable law, and B, he does not discriminate. Consequently, Mr. Scheetz neither intentionally violated the law nor willfully acted in disregard of whether he did so. Here, Mr. Scheetz maintained a policy of one person per studio apartments for the 400 square foot apartments. That policy was based in part on the age of the building, which is nearly 100 years old, his observed turnover rates when two or more people occupy the 400 square foot studios, and three, wear and tear on the apartment when two or more people occupy the 400 square foot apartments. Further, in FAF v. U.S. HUD, United States HUD, Ninth Circuit, 1996, the court effectively endorsed landlords' desire to protect the investment value of their property. Various amici ignore the sentence on which we focused, at least implicitly arguing that defendants believe, the defendant must believe in an objective standard. We, instead, believe that if Mr. Scheetz had a distinct belief that what he was doing was proper, that punitive damages do not apply. No case that we were able to find in which defendant was held liable in a disparate impact case for punitive damages under the Fair Housing Act, where there was no evidence of intentional discrimination. Here, not only was there no evidence, but the City of Seattle Human Rights Department found no intentional discrimination. So let me just make sure I understand your position. I've read your briefs and everything, but your position essentially is that, I believe it was called the Keating Memo? Yes. And somehow or other, is the guiding rule in this situation? Yes. And that the regulation that was promulgated back in 2013, 24 CFR section 100.500, really has nothing to do with that? Has no effect here. Is that what you're saying? State again. Has no effect, doesn't have any, doesn't apply here. Is that what your position is? No, what we're saying is that the regulation does not change the requirement that the Fair Housing Act allows for a reasonable policy. And you get that from the Keating Memo? Keating Memo and Kohlstad versus ADA. Okay. And FAF. Let me ask you just on the punitive damages. This policy that Mr. Sheets had adopted before the lawsuit was filed, had he ever been notified that it was improper or contrary to the policies of the City of Seattle or the State of Washington? The Fair Housing Act. Before the lawsuit was filed? Yes. The Seattle Department of Human Rights gave me such notice. Anybody else? Not that I recall. And after the lawsuit was filed, he was really on notice? That's correct. Did he take any steps to change the policy? No, he believed, other than filing the appeal, he believed that his policy was reasonable, still believes that his policy was reasonable. And is that policy still in effect today? In part. In part. Some of the units? Yes, the 400 square foot units. So actually there's been no change? No. I don't see if my colleagues have any questions at this time. I don't. Okay, we'll hear from the other side and then give you some time for rebuttal. Thank you, Your Honors. Good morning. May it please the Court. Jesse Wing and Jeffrey Tarrin on behalf of the Fair Housing Center of Washington. We are the appellee. I'd like to talk about three points. First, that the trial court's verdict in this case... Judgment. Fair enough, Your Honor. Jury verdict, bench judgment, okay. That the defendants failed to meet the business necessity test as required by Supreme Court precedent in inclusive communities and the HUD regulation that the Court has just been discussing, 24 CFR 100.500. And that the judge's ruling was supported by substantial evidence, so it should be affirmed. My understanding of the brief was that that was not contested by Mr. Sheets. In other words, he says, I didn't meet the business necessity test, but we really should stick with the reasonable test.  Which is a little difficult to do in light of the Supreme Court cases and our cases. Yes. So I don't think you have to spend much more time on that. Okay. I'm happy to move on. Well, before you get to... Okay. I guess you're going to address punitive damages. Let me just ask you this. So you brought claims under both, under all three provisions of the, relevant provisions of the Federal Housing Act. Washington Law Against Discrimination. Seattle Ordinance. And you got a significant amount of relief. Is it necessary? There really is very little law under Washington, in the Washington courts, about the Seattle Ordinance. And about the Washington Law Against Discrimination and adverse impact in this context. Is it necessary to even address those statutes in order to affirm the relief that was granted here? It's not necessary. The Fair Housing Act provides all the same relief. And having said that, I think that in particular the brief from the Washington State Attorney General's office provides very strong citations to the case law that the business necessity test is the test in Washington. And so there's every reason to affirm on those grounds under Washington law and the Seattle Ordinance. It is of course a benefit to the citizens of the state of Washington and the city of Seattle to have the development of their cases, of their ordinance in the state law for use. And so that's a good reason to affirm those. If we affirm based on state law, we do that in an indispo and wouldn't be presidential? Excellent point, Your Honor. I will move to I guess I would simply also point out that the defendants really didn't challenge the applicability of Washington law and the Seattle Ordinance. And so since it's unrebutted, it should be affirmed. As I understand your argument, as to those provisions, it all is tied to the Fair Housing Act. In other words, interpreting those provisions, you would look My point was that there's very little Washington law that's interpreted the Seattle Ordinance and Washington law against discrimination in this kind of context. In the housing context. Right. And the argument is, well, we generally look to what the federal law is. Let me alter that just a little bit, Your Honor. Unlike federally anti-discrimination law, which very often has a specific statute in a specific context. You've got Title 7 for certain kinds of employment discrimination. You have the Fair Housing Act for housing. You've got the Americans with Disabilities Act, which might include public accommodations in a certain context. The Washington law against discrimination contains all of those within the same law. And very often, the application in the housing context will rely on the case law and the interpretation of the same law in the employment context or the public accommodations context. So the fact that there's not very much housing law shouldn't deter this court from recognizing that the Washington Supreme Court's rulings under the Washington law against discrimination disparate impact business necessity test would apply to housing. With regard to the punitive damages, the defendants argue only a sufficiency of evidence. Simply say, I in my bones believe that I was not violating the law and that's enough. There's nothing the plaintiff can do about that. My understanding is the reason they maintained it was that they could show the single occupancy rule was reasonable. And so that became the key to really the trial after getting past the first point. But the punitive damages, whether or not it was reasonable. And the district court went on to find that they did not carry their burden. But tell me what is why this would result in punitive damages if you don't think a law is reasonable. You have a defense and you maintain the defense. Well, later on, we find out that didn't work. But up until that point, what would support punitive damages? Your Honor, what would support punitive damages here is the repeated warnings. Right. And that was all pre-trial. And post-trial. What were the punitive damages for? So, and I mean both I don't mean post-trial. What I mean is post-summary judgment. Okay. So, first, the defendant was notified by a HUD complaint. Okay. That was filed. Second, there was an investigation in the Seattle Office of Civil Rights issued findings for cause to believe that discrimination had occurred and that there was disparate impact. You agree that there's no evidence of intentional discrimination here. Well, I mean, he didn't say, I don't want families. He didn't put that up. He just said, I want one person. And he had some reasonable grounds for saying one person, as I understood it. He said, the policy is simple to administer. Single people stay in apartments longer, so this reduces turnover. There is less wear and tear on the apartment with just one occupant. Parking is limited in the apartment complex. And you may have to have a new utility system. All of those things have nothing to do with family occupancy. They don't on their face, Your Honor. Of course. However... Where is the malicious and evil intent which is necessary to punish people civilly under punitive damages? Your Honor, under Smith v. Wade, the Supreme Court said that malicious and evil intent is not required. Only a reckless or callous disregard is required. Is opposing an administrative order reckless? Because then we wouldn't have many cases because nobody would oppose them. That's fair. But here, Judge Zille found this wasn't a matter of your evidence doesn't quite reach the standard. He found the explanations arbitrary and completely unsupported. If you read his opinion, it says no evidence, no evidence, no evidence, no credible evidence, no explanation repeatedly. The message here to Mr. Sheets is you showed up with nothing. Counsel, the district court didn't order any relief. No injunctive relief prior to the bench trial. So the... It's not like the N. Ray Sue case, you know, where relief was ordered prior to the bench trial. Why wouldn't the apartment owner think, well, I still have a chance? He had reasons. Well, no, because he had such bankrupt explanations for why he had this policy. Saying the policy is simple to people is just as simple as one person. You could look at it and say he had pretty good explanations but no proof. Well, I would counter, actually, that he had nothing other than his say-so. For example, his free rider explanation for utility meters simply didn't add up. He has free riders. He didn't either think it through or he didn't believe it. And he had many, many months to do that. I will tell you what I think is the coup de grace here, which is he says when asked aren't you concerned that you are prohibiting 100% of the families from living in your apartments? And he says, why should I care? That is the very definition of deliberate disregard. And as you've seen from the argument today, despite Judge Zille's injunction, this occupancy restriction is still in place. This isn't a question of a man who's decided he's got an argument to make and he wants to bring it to the end. Well, I guess the response to that was, well, we have an injunction now. We might have punitive damages. But before the trial, he thought that he had a defense. He's entitled to a defense. And he wasn't enjoined from doing anything. And that's what the punitive damages were based on, the conduct prior to trial. Now, after trial, you have another story. That's fair. I think that Judge Zille, who was the district judge and who was able to look at Mr. Sheets' testifying, his demeanor, his wording, his tone, concluded and stated as such in his opinion that this defendant didn't want to change, was unwilling to change, was unwilling to abide by the law. So he entered an injunction. So he entered an injunction, but he also thought it was necessary to punish that behavior and deter the behavior of other landlords in this affordability crisis area here in Washington and Seattle. He said that I've got to step in here and send a very, very strong message to this defendant. You can't simply ignore all the warnings. You're showing a reckless disregard. You don't care. Your explanation is I do this because I wish to. That's not a reasonableness, even a reasonableness argument. But you would also be sending all the message to the people who really believe they have a reason and don't appear, and even appear before district judges, you know, I know you really believed and you had it in your heart and you believed you had reasons and I find that you don't and I enjoin you. So you would be targeting those people too. I would say not, Your Honor, and here's why. First of all, Mr. Sheets' explanations changed, okay? He told the Seattle Office of Civil Rights one thing. He told the court something else. You even heard a new explanation today. The 100-year-old building, that's nowhere in the record. Judge Zille was plainly finding that this man was not believable, that he lacked credibility in his explanations for why he had this policy. He just had this policy because he wanted it. And come hell or high water, he was going to keep his policy. That calls out for punitive damages. I might also point out that somebody who believed that they had a right to continue pursuing their policy would stop doing it because they'd been told it's a violation of the law, and they could proceed with their appeal. But this defendant blew past Judge Zille's ruling that this violated the law, blew past now the facts. Judge Zille observed when he saw the defendant testify, and he concluded that there was a deliberate disregard. And the punitive damages, which were small in the scope of the wealth of this defendant, were needed in order to put a stop to this behavior. And it turns out even that was not sufficient. At the trial, the judge also saw that this defendant denied that he knew that family status discrimination was illegal. And when Plankton's counsel presented him with his deposition, he had to say, oh, no, sorry, I guess it's true. I did know that this was illegal. The judge witnessed non-credible explanations. And indeed, by the end of the trial, the judge actually stated that at some point he believed this became intentional. So it may not have been that Mr. Sheets originally came up with this occupancy restriction because he believed that, because he didn't like families with children. But at some point, his unwillingness to stop his policy became intentional. And that cries out for punitive damages in this case. Recall also this is a professional landlord, okay? Somebody who's said that he's been apprised of the law over the years. And in the face of what he's observing and knowing that 100% of families cannot get into his building, his explanations are too weak. And the court found it was obvious that punitive damages were necessary. Thank you for your time. Is this Mr. Hunter? He had some time for rebuttal. Just briefly, Your Honors. Counsel referenced that the nearly 100-year-old building had not been referenced before. That's not true. The record will reflect that the building is a 1922 building. And that was an affidavit submitted at the trial level. Further, Mr. Sheets did not believe that he was discriminating. The 400-square-foot apartments are probably two-thirds of that building. The remaining apartments are bigger, and they do contain families. There is nothing in the record that suggests that he callously disregarded the law in this instance. He believed that his ability to preserve the value of his property was sufficient to maintain his position. Okay. Thank you very much. Thank you. Thank you, Mr. Hunter. And thank you, Counsel. The matter is adjourned.
judges: Paez, Bea, Black